**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO ELECTRIC POWER AUTHORITY, through the PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY and the Third-Party Procurement Office (3PPO), under Regulatory Compliance Services, Corp. (RECOMS),<br><br>Plaintiff,<br><br>v.<br><br>NFENERGIA LLC,<br><br>Defendant. | CIVIL NO. 26-_____ (___)<br><br>RE: DECLARATORY JUDGMENT; SPECIFIC PERFORMANCE OF SECTION 22.12 (TOLLING ARRANGEMENTS); INJUNCTIVE RELIEF<br><br>(Diversity: 28 U.S.C. § 1332)<br><br>EMERGENCY RELIEF REQUESTED |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, the Puerto Rico Electric Power Authority ("PREPA"), through the Puerto Rico Public-Private Partnerships Authority ("P3A"), which holds the sole authority to enforce the Gas Sales Agreement described below against the Seller under its Section 22.13(b), and through the Third-Party Procurement Office ("3PPO"), administered by Regulatory Compliance Services, Corp. ("RECOMS"), and through its undersigned legal representation, respectfully files this Complaint against Defendant NFEnergia LLC ("NFE"), and states, alleges, and requests the following:

## I. NATURE OF THE ACTION

1. This is an action to enforce Section 22.12 of the Gas Sales Agreement dated December 4, 2025, OCPR No. 2026-G00097 (the "GSA"). Under Section 22.12.1, if NFE, as Seller, fails to deliver Gas as required or declares Force Majeure, NFE "will enter into tolling

arrangements, consistent with the terms set forth in Schedule 5, permitting Buyer to deliver third-party LNG to Seller's Facilities." PREPA is the Buyer.

2. NFE has not delivered Gas to San Juan Units 5 and 6 since September 16, 2026. Those units have operated on diesel since that day. P3A activated Section 22.12 on September 22, 2026. NFE has refused to perform, calling tolling "premature."[1]

3. PREPA disputes that the interruption is Force Majeure, but its claims do not depend on that question or on who is at fault. Section 22.12.1 is triggered by an unexcused failure to deliver and, independently, by a declaration of Force Majeure. Every reason NFE can give for not delivering leads to one trigger or the other.

4. PREPA seeks a declaration that Section 22.12.1 has been triggered, and temporary, preliminary, and permanent injunctive relief requiring NFE to take the steps Section 22.12 and Schedule 5 require so that PREPA can bring natural gas from a third party through NFE's San Juan facilities.

5. PREPA does not seek damages in this action and reserves all claims for Deliver or Pay Payments and other monetary relief under the GSA.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Plaintiff PREPA is a citizen of the Commonwealth of Puerto Rico. Defendant NFE is a citizen of the States of Delaware and New York: its sole member is

[1] NFE's failure to deliver began before the dispute over the Amur River's entry into the port could have caused it. When supply stopped on September 16, 2026, the Energos Princess, the vessel then supplying the terminal, was nearly empty; the Amur River had not yet arrived off San Juan, and the court in Civil No. 25-1462 had not yet entered its September 18, 2026 order restricting LNG vessel movements. (See ¶¶ 35-37.)

Atlantic Energy Holdings LLC, whose sole member is New Fortress Energy Inc., a corporation incorporated under the laws of the State of Delaware with its principal place of business in New York, New York. The amount in controversy, measured by the value of the relief sought, far exceeds $75,000.

7. NFE has itself valued the difference between its contract Gas and diesel for the cargo on board the Amur River alone at $28.2 million. (Ex. E at 2.)

8. This action is brought by PREPA as Buyer under the GSA and as the real party in interest with respect to the rights it asserts. P3A and the 3PPO, administered by RECOMS, appear solely in a representative and enforcement capacity on PREPA's behalf and are not parties to this action; their respective citizenships are not at issue for purposes of diversity jurisdiction.

9. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Federal Rule of Civil Procedure 65.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). NFE maintains its San Juan terminal and operations here, and a substantial part of the events giving rise to PREPA's claims occurred here.

11. NFE is subject to the personal jurisdiction of this Court. It maintains continuous operations at the Port of San Juan, has designated a resident agent in the Commonwealth of Puerto Rico for service of process, is organized under the laws of the Commonwealth of Puerto Rico (GSA at 1), and irrevocably waived any objection based on lack of personal jurisdiction or inconvenient forum (*id.* § 21.5, at 39-40).

12. The GSA contains a choice-of-law clause designating the laws of the Commonwealth of Puerto Rico, including the Civil Code of Puerto Rico of 2020, as the law governing any dispute, without giving effect to conflict-of-law rules. (GSA § 16, at 33; *id.* § 21.3,

at 39.) The GSA further requires that "[a]ll proceedings shall be conducted in the English language." (*Id.* § 21.3, at 39.) The GSA, executed on December 4, 2025, is governed by the Civil Code of Puerto Rico of 2020.

13. The GSA permits this action. Section 21.4 provides: "Nothing in this Article 21 shall prevent a Party from applying to the courts of Puerto Rico for urgent interim relief, including injunctions or conservatory measures, prior to the final adjudication of a Dispute." (GSA § 21.4, at 39.) This Court is a court of Puerto Rico, sitting in San Juan.

14. The good-faith negotiation periods in Section 21.1 do not bar this action. Section 21.4 applies to "[n]othing in this Article 21," which includes Section 21.1. PREPA remains willing to engage in the Section 21.1 process in parallel.

## 15. **III. THE PARTIES**

16. Plaintiff PREPA is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, created by Act No. 83 of May 2, 1941, as amended, 22 L.P.R.A. § 191 et seq., with the capacity to sue and be sued in its own name. PREPA owns the Legacy Generation Assets, including the generation units supplied under the GSA, is Buyer under the GSA, and bears the cost of the fuel burned in place of the Gas NFE does not deliver. PREPA is the real party in interest under Federal Rule of Civil Procedure 17(a).

17. Under the GSA, Buyer is represented by Genera PR LLC ("Genera") as agent, subject to Section 22.13. (GSA at 1.) Section 22.13 provides that, "[n]otwithstanding anything in this Agreement that may be to the contrary," P3A "(a) shall serve as the sole authority for oversight of Genera under this Agreement; (b) shall have the sole authority to enforce this Agreement against Seller; [and] (c) shall have the sole right to give (or withhold) any approvals, consents or waivers

on behalf of Buyer or Genera." (*Id.* § 22.13, at 44.) PREPA brings this action through P3A, the authority the GSA designates to enforce Buyer's rights against Seller.

18. Defendant NFE is a limited liability company organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business at 111 W. 19th Street, 8th Floor, New York, New York 10011. (GSA at 1.) NFE is Seller under the GSA and owns and operates the only LNG import terminal in San Juan.

## IV. RELATED PROCEEDINGS

19. PREPA identifies the following related proceedings, as required by Local Civil Rule 3A(b):

20. *PREPA v. NFEnergia LLC, et al.*, Civ. No. 26-1423 (PAD), in which PREPA seeks damages from NFE and others for LNG delivery shortfalls under other fuel supply agreements. The GSA is not at issue in that action.

21. *Busto-Álvarez, et al. v. NFEnergia LLC*, Civ. No. 25-1462 (SCC), in which the San Juan Bay Pilots sued NFE over tug requirements for LNG carriers calling at NFE's terminal. PREPA is not a party. That action is governed by a Stipulation of Interim Measures under which there are to be no LNG vessel movements other than as provided in its paragraph 3 "unless otherwise ordered by the Court or the Coast Guard." (Civ. No. 25-1462, Dkt. 124 ¶ 4, at 2.) On September 18, 2026, the Court there ordered that no LNG vessel other than the Energos Maria and the Energos Princess move within the Port of San Juan pending a ruling on the Pilots' emergency motion. (*Id.*, Dkt. 348.)

22. The relief PREPA seeks here does not require any vessel movement and does not ask this Court to modify any order entered in Civil No. 25-1462. Any future movement of a third-

party vessel under a tolling arrangement will be sought from the court and the Captain of the Port with authority over it.

## V. FACTUAL ALLEGATIONS

### A. The GSA.

23. NFE executed the GSA on December 4, 2025. (GSA at 46.) A true and correct copy of the GSA is attached as Exhibit A and is incorporated by reference. Under it, NFE supplies natural gas to PREPA's generating units, including the San Juan Units and the Palo Seco Units. (Id., Recital (B); see id., Sched. 5, item 6.) Seller's Facilities include NFE's San Juan LNG import terminal, its jetty and unloading arms, and the pipelines, ISO containers, and trucks required to deliver Gas to the Delivery Points. (*Id.*, Recital (A).)

24. Section 4.4.1 requires Seller to deliver Gas at the Delivery Points in the Scheduled Monthly Quantity, except as excused due to reasons attributable to Buyer or Force Majeure affecting Seller. (*Id.* § 4.4.1, at 19.)

25. Section 4.4.2 requires Buyer, when Seller does not deliver, to use reasonable efforts to procure Gas or Replacement Fuel from an alternative source on commercially reasonable terms. (*Id.* § 4.4.2, at 19.)

26. Section 22.12.1 provides: "If Seller (A) fails to deliver Gas as and when required under Section 4.4.1 of this Agreement or (B) declares Force Majeure, then Seller will enter into tolling arrangements, consistent with the terms set forth in Schedule 5, permitting Buyer to deliver third-party LNG to Seller's Facilities (the 'Tolling Arrangements')." (*Id.* § 22.12.1, at 44.)

27. Seller is compensated at $0.50 per MMBtu of LNG delivered under the Tolling Arrangements. (*Id.* § 22.12.2.) Once Seller notifies Buyer that it can resume deliveries, Buyer stops scheduling new tolling deliveries, and committed cargoes are completed. (*Id.* § 22.12.3.) Any

Tolling Arrangement "shall be treated as a separate and independent agreement for purposes of enforcement, performance, and remedies." (*Id.* § 22.12.4, at 44.)

28. Schedule 5 sets out the terms of a Definitive Tolling Agreement between NFE, as Terminal Operator, and the third-party supplier that brings the LNG, the Terminal User. (*Id.*, Sched. 5.) Under Schedule 5: (a) the Terminal User delivers LNG at the flange connecting its LNG vessel to the terminal (item 2); (b) all pilotage, port, and tug costs attributable to the Terminal User's vessels are for the Terminal User's account (item 5); (c) the Terminal Operator delivers regasified LNG to the metering stations immediately before San Juan Units 5 and 6 and the San Juan TM units (item 6); and (d) the Terminal Operator must develop the SJ Terminal Rules in parallel with negotiating the Definitive Tolling Agreement (item 9). Title to the LNG passes to PREPA under PREPA's contract with the Terminal User. (*Id.*, n.1.)

29. In Schedule 5, the parties "agree to negotiate in good faith to finalize and execute a Definitive Tolling Agreement consistent with the terms set forth in this Tolling Term Sheet." (*Id.*, item 12.)

30. In the GSA, each party represented that, "apart from the matter of Elstrom [sic] et al. v. NFEnergia LLC, et al., 25-cv-1462 (D. Puerto Rico)," no pending proceeding could materially affect its ability to perform. (*Id.* § 13.1(iv), at 29.) That action, filed by Captain Jake Elmstrom and other San Juan Bay Pilots, is now captioned *Busto-Álvarez, et al. v. NFEnergia LLC*. <u>NFE executed the GSA with knowledge of that proceeding and of the Stipulation it had signed eight weeks earlier.</u>

**B. The San Juan terminal: the only point of entry for LNG in northern Puerto Rico.**

31. NFE operates the only LNG receipt, regasification, and handling facility in the northern part of Puerto Rico. That facility, located at Piers A and B of the Port of San Juan, is the

sole point of entry for LNG destined to supply San Juan Units 5 and 6. (26-1423 Compl. ¶ 19.) No other facility can receive LNG for those units. Tolling through NFE's facilities is therefore the only means by which third-party LNG can reach them.

32. NFE's San Juan terminal has no reserve LNG storage tanks. The LNG carrier moored at the pier serves as both the transport vessel and the reservoir. (Civ. No. 25-1462, Dkt. 71-1 ¶ 4.) When the vessel at the pier runs out of LNG, supply to San Juan Units 5 and 6 stops.

**C. The supply constraint is recurring.**

33. The present interruption is not the first. NFE has previously invoked Force Majeure for the same kinds of port and navigation constraints, including by notices dated October 15, 2024 (Coast Guard restrictions on ship-to-ship transfers), October 24, 2024 (Army Corps of Engineers dredging at its berth), and October 3, 2025 (the temporary restraining order entered in Civil No. 25-1462). PREPA disputes those claims in *PREPA v. NFEnergia LLC, et al.*, Civ. No. 26-1423 (PAD), and does not ask this Court to resolve them. A true and correct copy of NFE's notice of October 3, 2025 is attached as Exhibit I and is incorporated by reference.

34. On July 12, 2025, the LNG vessel that was then the only source of LNG for the San Juan temporary generation units departed the Port of San Juan without contractual authorization and without adequate prior notice. (26-1423 Compl. ¶ 34.) Because the terminal has no storage, each such event interrupts supply immediately.

**D. The interruption.**

35. On September 16, 2026, the Energos Princess was nearly empty. San Juan Unit 6 switched to diesel at 10:50 a.m. and San Juan Unit 5 at 12:43 p.m., and NFE shut down terminal sendout at 12:45 p.m.

36. NFE chartered the LNG carrier Amur River to replace the Energos Maria while the Maria is in drydock. (Ex. G at 1.) The Amur River arrived off San Juan on or about September 18, 2026, and remained outside the harbor. (Civ. No. 25-1462, Dkt. 385 ¶¶ 1-2.)

37. In Civil No. 25-1462, the court ordered on September 18, 2026 that no LNG vessel other than the Energos Maria and the Energos Princess move within the Port of San Juan pending its ruling on the Pilots' emergency motion, and on September 24, 2026 found that NFE "has continued to stall proceedings by refusing to provide this critical information," that the Pilots "have not refused to perform the maneuver," and that "the main issue as to this condition is Defendant NFEnergia's refusal to pay for the standby tugs." (Civ. No. 25-1462, Dkt. 373 at 5, 6, 6-7.) The court sanctioned NFE on September 25, 2026. (Civ. No. 25-1462, Dkt. 377.)

38. NFE has stated that "the only thing preventing the Amur River from entering San Juan Harbor right now is a condition by the pilots (payment)." (Ex. E at 2.)

39. On September 26, 2026, NFE informed the court in Civil No. 25-1462 that the Amur River, low on provisions, had been temporarily diverted to Santo Domingo, Dominican Republic, and had departed that day. NFE did not state when the vessel would return. (Civ. No. 25-1462, Dkt. 385 ¶¶ 3-5.)

40. NFE's return to supply remains uncertain. The Amur River's beam of 44.24 meters exceeds the dimensions assumed in the Coast Guard's Letter of Recommendation for the terminal, and the San Juan Bay Pilots have stated that the conditions they set for berthing her, including a writing from the Captain of the Port, remain unmet. (Civ. No. 25-1462, Dkt. 395 ¶¶ 3, 7.) NFE has stated that it is not in a position to state the distance from its wharf to the edge of the federal channel. (*Id.*, Dkt. 394-1 at 3.)

41. As of the filing of this Complaint, NFE has not delivered Gas to San Juan Units 5 and 6 and has not given notice under Section 22.12.3 that it is able to resume deliveries.

**E. Activation of Section 22.12 and NFE's refusal.**

42. On September 18, 2026, the 3PPO, in coordination with Genera, sent NFE a Formal Notice and Request for Written Clarification reserving Buyer's rights under Sections 4.4 and 22.12. (Ex. B; Ex. D at 2.) A true and correct copy of that notice is attached as Exhibit B and is incorporated by reference.

43. On September 21, 2026, NFE sent two notices under Section 11.4 stating that it considers that events have occurred that may lead it to claim Force Majeure relief. (Ex. C; Ex. D at 2.) True and correct copies of those notices are attached as Exhibit C and are incorporated by reference.

44. On September 22, 2026, the 3PPO, on behalf of P3A, notified NFE that the condition in Section 22.12.1(A) had occurred, and asked NFE to (a) confirm its readiness to proceed with the Tolling Arrangements; (b) identify the operational, nomination, berthing, measurement, and title-transfer protocols applicable to third-party LNG; (c) confirm the availability of the terminal, pipelines, ISO containers, and trucks needed to receive, store, regasify, and redeliver third-party LNG; and (d) designate a 24-hour contact. (Ex. D at 2-3.) A true and correct copy of that letter is attached as Exhibit D and is incorporated by reference.

45. On September 23, 2026, NFE responded that it "believes it premature to consider tolling of Seller's Facilities," and provided none of the requested confirmations. (Ex. E at 2.) A true and correct copy of that letter is attached as Exhibit E and is incorporated by reference.

46. On September 25, 2026, the 3PPO restated the outstanding items, requested that they be completed within 24 hours, and advised that it was considering injunctive relief to require

NFE to comply with Section 22.12. (Ex. F at 2-3.) A true and correct copy of that letter is attached as Exhibit F and is incorporated by reference.

47. On September 25, 2026, NFE responded that the 3PPO's letter "represents a misunderstanding of the situation," and again provided none of the requested confirmations. (Ex. G at 1-3.) A true and correct copy of that letter is attached as Exhibit G and is incorporated by reference.

48. Later on September 25, 2026, the 3PPO responded to NFE's letter. It explained that the increased fuel costs Puerto Rico is facing result from NFE's failure to deliver Gas since September 16, 2026, reserved Buyer's position on NFE's September 21 notices, and asked NFE to confirm, by 12:00 p.m. on September 28, 2026, that it will cooperate with the Tolling Arrangements under Section 22.12 and Schedule 5, including access by a third-party LNG vessel to NFE's San Juan facility and Palo Seco regasification equipment. (Ex. H at 1-3.) A true and correct copy of that letter is attached as Exhibit H and is incorporated by reference.

49. A third-party supplier has advised the 3PPO that it is available to deliver Gas by truck immediately and by vessel in the coming weeks. (Ex. D at 3.)

**F. The declared energy emergency.**

50. The United States Department of Energy has determined, under Section 202(c) of the Federal Power Act, 16 U.S.C. § 824a(c), that an emergency exists in Puerto Rico due to a shortage of electric energy and of facilities for its generation, and has ordered PREPA and its agents to operate specified generation resources as needed to maintain grid reliability. DOE most recently set out that determination in Order No. 202-25-1D, issued May 7, 2026, in which the Secretary of Energy determined that "an emergency continues to exist in Puerto Rico" and stated that DOE would continue to assess the need for additional emergency orders "until such time as

the emergency conditions are no longer present." A true and correct copy of that order is attached as Exhibit K and is incorporated by reference. DOE has since renewed the order through November 7, 2026. DOE Order No. 202-25-1E (Aug. 7, 2026).

51. The Governor of Puerto Rico has likewise declared and expanded a state of energy emergency covering the Island's generation system. Executive Order OE-2025-016 (Apr. 2, 2025), § 1.

**G. Harm.**

52. In Civil No. 25-1462, Genera's Director of Operations attested on September 30, 2025 that Genera estimates the additional cost of running San Juan Units 5 and 6 and the GE TM2500 units at San Juan and Palo Seco on diesel rather than natural gas "exceeds $700,000 per day," and that diesel operation reduces efficiency by 2 to 3 percent, reduces available capacity by approximately 10 percent, reduces unit reliability, and increases the risk of outages. (Civ. No. 25-1462, Dkt. 85-2 at 1.) A true and correct copy of that declaration is attached as Exhibit J and is incorporated by reference. Genera is a subsidiary of New Fortress Energy Inc., NFE's parent.

53. NFE itself has represented that its contract Gas costs $9.76 per MMBtu and that diesel costs $34.03 per MMBtu, and has valued the difference for the Amur River cargo alone at $28.2 million. (Ex. E at 2.)

54. NFE has itself told the court in Civil No. 25-1462 that the restrictions on the Amur River "delay fuel deliveries vital to Puerto Rico's power grid." (Civ. No. 25-1462, Dkt. 393 ¶ 22.)

55. <u>PREPA absorbs the excess cost of the diesel burned in place of the Gas NFE does not deliver. That loss would be transferred to Puerto Rico's ratepayers if not recovered.</u>

56. If, as NFE contends, its failure to deliver is excused by Force Majeure, no Deliver or Pay Payment is owed for the interruption, and Section 12.1 bars recovery of consequential losses

"whether or not foreseen or foreseeable." (GSA § 12.1, at 27.) On NFE's own theory, the harm caused by the interruption is not compensable in damages.

57. The steps required before a Terminal User vessel can deliver, including vessel vetting, compatibility reviews, and the SJ Terminal Rules, take time. (GSA, Sched. 5, items 7, 9.) Each day NFE refuses to begin them extends the period before third-party LNG can reach San Juan Units 5 and 6.

## VI. CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT (28 U.S.C. § 2201)

58. PREPA incorporates the preceding paragraphs.

59. An actual controversy exists between PREPA and NFE over whether Section 22.12.1 has been triggered and whether NFE must perform it now.

60. Where the terms of a bilateral contract are clear and leave no doubt as to the intention of the parties, their literal meaning controls, and the clauses of a contract are read together, with special clauses prevailing over general ones. Articles 354 and 356 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. §§ 6342, 6344.

61. NFE has not delivered Gas as required under Section 4.4.1 since September 16, 2026. That failure satisfies Section 22.12.1(A).

62. In the alternative, if NFE contends that its failure is excused by Force Majeure, NFE has invoked Force Majeure, and Section 22.12.1(B) is satisfied. NFE cannot rely on Force Majeure to excuse delivery under Section 4.4.1(b) while denying that it has declared Force Majeure for purposes of Section 22.12.1(B). NFE has, in substance, done so: it has told the court in Civil No. 25-1462 that governmental restrictions beyond its control are delaying its fuel deliveries. (Civ. No. 25-1462, Dkt. 393 ¶ 22.)

63. PREPA is entitled to a declaration that Section 22.12.1 has been triggered and that NFE is obligated to enter into Tolling Arrangements consistent with Schedule 5.

## COUNT II
## SPECIFIC PERFORMANCE OF SECTION 22.12

**(P.R. Civ. Code arts. 1077, 1080, 1233, 1235)**

64. PREPA incorporates the preceding paragraphs.

65. Under Puerto Rico law, what the parties agree in a contract has the force of law between them. Article 1233 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9754.

66. By a preliminary contract, the parties bind themselves to enter into a future contract. A preliminary contract need not satisfy the formalities required of the future contract, and if the party called upon refuses to execute the new contract, the court may require strict performance. Article 1235 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9756.

67. Under that principle, a party bound by a preliminary contract is "not at liberty to withdraw from negotiations at will," and an action for specific performance lies where the obligation "does not refer to purely personal acts." *Redbrick Partners, LP v. Gautier*, 552 F. Supp. 2d 183, 184-86 (D.P.R. 2007) (quoting *Rossy v. Tribunal Superior*, 80 D.P.R. 729, 743 (1958)); *see also Almeida-León v. WM Cap. Mgmt., Inc.*, 993 F.3d 1, 14-15 (1st Cir. 2021) (affirming order of specific performance of an unambiguous contract under Puerto Rico law). NFE's obligation to make its terminal available and enter into Tolling Arrangements is a commercial obligation, not a personal act.

68. An obligation to do consists in performing an act or rendering a service. Article 1077 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9012. When the party obliged to do something fails to do it, performance is ordered at the obligor's expense. Article 1080 of the Civil

Code of Puerto Rico of 2020, 31 L.P.R.A. § 9015. NFE's obligation to enter into Tolling Arrangements and to make Seller's Facilities available for them is an obligation to do.

69. Section 22.12.1 is a binding obligation to enter into Tolling Arrangements. Schedule 5 supplies their terms and binds NFE to negotiate the Definitive Tolling Agreement in good faith.

70. NFE has refused to perform Section 22.12.1.

71. PREPA has no adequate remedy at law. Section 22.12.4 makes any Tolling Arrangement separate and independent for purposes of enforcement, performance, and remedies, and, on NFE's own theory, the harm caused by the interruption is not compensable in damages.

72. PREPA is entitled to an order requiring NFE to perform Section 22.12, as set out in the Prayer for Relief.

**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH**

**(P.R. Civ. Code arts. 15, 1062, 1236, 1271, 1272)**

73. PREPA incorporates the preceding paragraphs.

74. Under Puerto Rico law, rights must be exercised and duties performed in accordance with the requirements of good faith, and both obligor and obligee must act in good faith in performing an obligation. Articles 15 and 1062 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. §§ 5334, 8983. Where the contract does not provide otherwise, it is supplemented by good faith. *Id.* art. 1236, 31 L.P.R.A. § 9757. Negotiations toward a contract must be conducted with loyalty and good faith, including the duty to cooperate in forming the contract and to obtain and provide relevant information. *Id.* art. 1271, 31 L.P.R.A. § 9881. Breaking off negotiations suddenly or arbitrarily, failing to respect partial agreements already reached, and conducting negotiations without seriousness violate that duty. *Id.* art. 1272, 31 L.P.R.A. § 9882.

75. In Schedule 5, NFE agreed to negotiate in good faith to finalize and execute a Definitive Tolling Agreement, and to develop the SJ Terminal Rules in parallel with that negotiation.

76. NFE has refused to engage, has withheld the protocols a Terminal User requires, and has called "premature" a clause triggered by its own failure to deliver. That conduct breaches NFE's duty of good faith under the GSA and Puerto Rico law.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, PREPA respectfully requests that the Court:

A. Declare that Section 22.12.1 of the GSA has been triggered and that NFE is obligated to enter into Tolling Arrangements consistent with Schedule 5;

B. Enter a temporary restraining order requiring NFE to (i) confirm in writing that its San Juan LNG terminal, jetty, unloading arms, regasification equipment, and pipelines are available to receive third-party LNG under Tolling Arrangements; (ii) designate a representative with authority, available at all times, to coordinate implementation; (iii) deliver the operational, nomination, berthing, measurement, and title-transfer procedures and the vessel compatibility and vetting criteria that NFE applies at its San Juan terminal; and (iv) refrain from any act that would prevent or delay the receipt of third-party LNG at its San Juan terminal;

C. Enter a preliminary injunction continuing that relief and requiring NFE to (i) conduct in good faith the vetting and compatibility review of any Terminal User vessel identified by Buyer, acting through Genera or as P3A directs under Section 22.13, within a period fixed by the Court; and (ii) negotiate in good faith with that

Terminal User, on a schedule fixed by the Court, a Definitive Tolling Agreement consistent with Schedule 5;

D. Enter a permanent injunction requiring NFE to execute and perform a Definitive Tolling Agreement consistent with Schedule 5, with any disputed terms resolved by the Court;

E. Set security under Rule 65(c) in a nominal amount, if warranted;

F. Award PREPA its costs; and

G. Grant any other relief that is just and proper.

I HEREBY CERTIFY that on September 28, 2026, I filed this document through the Court's CM/ECF system, and that upon filing I will send it, with its exhibits, by e-mail to NFEnergia LLC at the addresses designated for notices in Section 19.1.2 of the Gas Sales Agreement, Attention: Chris Guinta (cguinta@newfortressenergy.com), with a copy to New Fortress Energy Inc., Attention: General Counsel (legal@newfortressenergy.com).

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 28th day of September, 2026.

*s/Max Pérez-Bouret*
Lcdo. Max Pérez-Bouret
USDC-PR Bar No.222612
Calle O'Neill G-14, Suite A
San Juan, PR 00918
Tel. 787-990-5212
Email: maxperezbouret@lexmaxpr.com
Counsel for Plaintiff PREPA by designation of 3PPO

## LIST OF EXHIBITS

The following exhibits are attached to this Complaint and are incorporated by reference.

Exhibit A: Gas Sales Agreement dated December 4, 2025, OCPR No. 2026-G00097, with Schedule 5

Exhibit B: 3PPO Formal Notice and Request for Written Clarification (September 18, 2026)

Exhibit C: NFE notices under GSA Section 11.4 (September 21, 2026)

Exhibit D: 3PPO letter, Activation of Tolling Arrangements (September 22, 2026)

Exhibit E: NFE letter (September 23, 2026)

Exhibit F: 3PPO letter, Follow-Up on Tolling Arrangements (September 25, 2026)

Exhibit G: NFE letter (September 25, 2026)

Exhibit H: 3PPO letter, Response to NFE's letter of September 25, 2026 (September 25, 2026)

Exhibit I: NFE Notice of Force Majeure, TRO and Pilots (October 3, 2025)

Exhibit J: Declaration of Genera's Director of Operations, Civ. No. 25-1462, Dkt. 85-2 (September 30, 2025)

Exhibit K: U.S. Department of Energy Order No. 202-25-1D (May 7, 2026)

Exhibit L: Declaration of Miguel García