**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PUERTO RICO ELECTRIC POWER AUTHORITY, through the PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY and the Third-Party Procurement Office (3PPO), under Regulatory Compliance Services, Corp. (RECOMS),

Plaintiff,

v.

NFENERGIA LLC,

Defendant.

Case No. 26-CV-01621 (MAJ)

**TEMPORARY RESTRAINING ORDER AND ORDER SETTING PRELIMINARY INJUCTION SCHEDULE**

Before the Court is Plaintiff Puerto Rico Electric Power Authority's ("PREPA") Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (the "Motion"). (**ECF No. 2**). Defendant NFEnergia LLC ("NFE") received notice of the Motion on September 28, 2026, (**ECF No. 4**), and responded on October 1, 2026. (**ECF No. 12**). PREPA filed a Reply later on October 1, 2026. (**ECF No. 16**). Having considered the Motion, the Complaint, the Response, the supporting declaration, and the record, the Court **DENIES WITHOUT PREJUDICE** the request for a temporary restraining order as set forth below.

## I. FACTUAL BACKGROUND

According to the Verified Complaint and the exhibits submitted in support of the

Request for TRO, PREPA is a public corporation and government instrumentality of the Commonwealth of Puerto Rico that operates power generating units in San Juan and Palo Seco. (**ECF No. 1 ¶¶ 1, 23**). Defendant NFE, an LLC under Puerto Rico law, owns and operates the only LNG import terminal in the northern part of Puerto Rico, located at Piers A and B of the San Juan Port. (**ECF No. 1 ¶ 18**).

PREPA and NFE entered into the Gas Sales Agreement (the "GSA") on December 4, 2025, under which NFE, the Seller, delivers and supplies natural gas to PREPA's power generating units. (**ECF No. 1 ¶ 23**). Section 21.12.1 of the GSA provides that "If Seller (A) fails to deliver Gas as and when required under Section 4.4.1 of this Agreement or (B) declares Force Majeure, then Seller will enter into tolling arrangements, consistent with the terms set forth in Schedule 5, permitting Buyer to deliver third-party LNG to Seller's Facilities (the '**Tolling Arrangements**')." (**ECF No. 1-1 at 48**).

NFE has not delivered LNG to San Juan Units 5 and 6 since September 16, 2026. (**ECF No. 1 ¶ 2**). That day, NFE shut down terminal sendout at 12:45 p.m. and PREPA switched Units 5 and 6 to run on diesel. (**ECF No. 1 ¶ 35**). The estimated cost of running both units and the GE TM2500 units at San Juan and Palo Seco on diesel is over $700,000 per day. (**ECF No. 1 ¶ 52**). Use of diesel over natural gas reduces efficiency by 2 to 3 percent, reduces available capacity by approximately 10 percent, and increases the risk of outages. *Id.* Because NFE's San Juan facility is the sole point of entry for LNG to Units 5 and 6, failure to supply natural gas results in an immediate interruption. (**ECF No. 1 ¶ 31**). Units 5 and 6 do not have reserve storage tanks, therefore the LNG pier serves as both transport vessel and reservoir. (**ECF No. 1 ¶ 32**). NFE's San Juan terminal is the only LNG receipt, regasification, and handling facility in northern Puerto Rico. (**ECF No. 1 ¶ 30**).

NFE chartered the LNG carrier *Amur River* to supply the terminal. (**ECF No. 1 ¶¶ 35—36**). However, due to an ongoing dispute between NFE and the San Juan Bay Pilots

Association in the action *Busto-Álvarez, et al. v. NFEnergia LLC*, Civ. No. 25-01462 (SCC), as well as concerns over the ship's size, the *Amur River* has yet to arrive at the terminal. (**ECF No. 1 ¶ 40**).

On September 21, 2026, NFE sent notices under Section 11.4 of the GSA stating that it considered that events have occurred that may lead it to claim Force Majeure relief. (**ECF No. 1 ¶ 43**). The next day, constituent entities of PREPA notified NFE that a triggering condition under Section 22.12.1(A) had occurred and requested that NFE confirm its readiness to enter into Tolling Agreements and take actions to facilitate PREPA's ability to obtain third-party LNG. (**ECF No. 1 ¶ 44**). NFE responded that it was premature to consider tolling their facilities and refused to provide the requested information. (**ECF No. 1 ¶ 45**). The parties subsequently failed to agree on whether NFE was obligated to enter into the Tolling Agreements (**ECF No. 1 at ¶¶ 46–48**). As of September 26, the *Amur River* had diverted to the Dominican Republic due to low supplies. PREPA alleges that a third-party supplier has advised them that it is available to deliver LNG by truck immediately and by vessel in the coming weeks. (**ECF No. 1 at ¶ 49**). On October 1, 2026, the San Juan Bay Pilots Association filed an informative motion before the Hon. Silvia Carreño-Coll that they have arranged pilotage services to bring the *Amur River* into San Juan Bay at 6:00 a.m. on October 4, 2026. ECF No. 425, *Busto-Álvarez, et al. v. NFEnergia LLC*, Civ. No. 25-01462 (SCC).

PREPA seeks a temporary restraining order directing NFE to refrain from taking actions that would prevent or delay the receipt at NFE's San Juan terminal of LNG supplied by a third party for PREPA, as well as affirmative relief facilitating the same. (**ECF No. 2 at 13**).

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure empowers the Court, in its discretion, to either issue a preliminary injunction or a temporary restraining order ("TRO"). Fed. R. Civ. P. 65. "A temporary restraining order is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available." *Ginzburg v. Martínez-Dávila*, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (internal quotations and citations omitted).

To determine whether to issue a TRO, the Court applies the same analysis used to evaluate a request for a preliminary injunction. *See Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021) ("The standard for issuing a TRO is the same as for a preliminary injunction.") (internal quotations omitted). Accordingly, the Court weighs four factors in determining whether to issue a TRO:

> (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.

*Central Maine Power Co. v. Maine Commission on Governmental Ethics and Election Practices*, 144 F.4th 9, 19 (1st Cir. 2025). Under Rule 65 of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> Fed. R. Civ. P. 65(b)(1)(A)–(B).

## III. ANALYSIS

Assuming, without deciding, that PREPA has met its burden of showing a likelihood of success on the merits, the Court turns to evaluate whether PREPA has made a requisite showing that it will suffer irreparable harm in the absence of the requested relief. Irreparable

harm is harm that cannot adequately be remedied "either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005). As the First Circuit has put it, irreparable harm and the inadequacy of traditional legal remedies are "flip sides of the same coin": if money damages will fully alleviate the harm, the harm is not irreparable. *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir. 1989). District courts enjoy broad discretion in evaluating the irreparability of alleged harm. *Id.*

PREPA claims that, in the absence of relief, it will suffer irreparable harm in the form of continuing to operate its units on diesel fuel, which reduces efficiency, accelerates wear, and increases the risk of forced outages. (**ECF No. 2 at 9**). NFE counters that PREPA's alleged injury is purely monetary in nature and that a history of prior diesel-switching events shows that such occurrences are a routine part of PREPA's operations. (**ECF No. 12 at 16–22**). They also point to litigation efforts by PREPA to seek compensation for these occurrences as evidence that it is compensable harm. *Id.*

While reduced efficiency and accelerated wear on facilities and machinery may be compensable through monetary harm, the compromised reliability of Puerto Rico's electrical grid plainly constitutes irreparable harm. *See California Independent Sys. Operator Corp. V. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1121 (E.D. Cal. 2001) (ruling that the threat of rolling blackouts and short supply of electricity constituted irreparable harm); *see also RENEW Northeast v. United States Dep't of Interior*, 2026 WL 1078282, *31 (D. Mass. Apr. 21, 2026). Nevertheless, PREPA does not make a showing that the requested relief will prevent the identified irreparable harm. In order for the extraordinary remedy of a temporary restraining order to be imposed, PREPA must show that the preliminary relief will protect against the irreparable harm, not merely that it is suffering irreparable harm. *See Winter v.*

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that . . . he is likely to suffer irreparable harm in the absence of preliminary relief[.]"); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should only issue where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable.") (internal quotations omitted).

As PREPA concedes, their requested affirmative relief is mandatory injunction that "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Braintree Laboratories, Inc. v. Citigroup Global Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (internal quotations omitted); (**ECF No. 2 at 5**). PREPA's requested relief would have the Court order NFE to furnish information within two days from the order and work with PREPA to facilitate the arrival of a third-party supplier of LNG at its San Juan terminal.

PREPA has been running San Juan Units 5 and 6 on diesel since September 16, 2026. But since the filing of the request for TRO, new developments prevent the Court from issuing the requested petition. The *Amur River* is scheduled to arrive with LNG in San Juan Bay early on the morning of Sunday, October 4. *See* ECF No. 425, *Busto-Álvarez, et al. v. NFEnergia LLC*, Civ. No. 25-01462 (SCC). Thus, PREPA fails to make a showing that, even if the Court ordered NFE to furnish the requested information and enter into Tolling Agreements, it would be able to thereafter conclude agreements with third parties such that it will receive third party LNG before it receives LNG from the *Amur River*. Accordingly, PREPA has not alleged facts that enable the Court to conclude that it will suffer irreparable harm *in the absence of relief*. *See Atlantic Salmon Federation U.S. v. Merimil Ltd. Partnership*, 2022 WL 558358, *7 (D. Me. Feb. 24, 2022) ("[A] plaintiff must 'show that the requested injunction would forestall the

irreparable harm.'") (quoting *Nat'l Wildlife Federation v. Nat'l Marine Fisheries Service*, 886 F.3d 803, 819 (9th Cir. 2018)).

## IV. CONCLUSION

For the foregoing reasons, the request for a Temporary Restraining Order and Preliminary Injunction at ECF No. 2 is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of October, 2026.

***s/* María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**